Michael N. Poli (State Bar No. 006431)
mpoli@merlinlawgroup.com
Lawrence R. Moon (State Bar No. 017000)
lmoon@merlinlawgroup.com
MERLIN LAW GROUP P.A.
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018
Telephone: (480) 315-9980
Facsimile:  (480) 315-9984

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Anderson Phillips and Jasmine Phillips, husband and wife,<br><br>        Plaintiffs,<br><br>    vs.<br><br>State Farm Fire and Casualty Company, an Illinois corporation<br><br>        Defendant. | Case No. 2:19-cv-04605-GMS<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT STATE FARM'S MOTION TO DISMISS COUNTS III AND IV OF THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(Oral Argument Requested)<br><br>(Assigned to the Hon. G. Murray Snow) |

## INTRODUCTION

Plaintiffs Anderson Phillips and Jasmine Phillips ("Mr. & Mrs. Phillips" or "Plaintiffs") hereby respond to the Motion to Dismiss (the "MTD") filed by Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant"). The MTD seeks a dismissal of Counts III (unjust enrichment) and IV (statutory insurance fraud) in the First Amended Complaint (the "FAC").

The MTD should be denied because (1) under § 39 of the RESTATEMENT (THIRD) OF RESTITUTION, where these is an "opportunistic" breach of contract, an unjust enrichment claim can be maintained, (2) the unjust enrichment claim can also be maintained here because the Plaintiffs never received the benefit of their contractual bargain, (3) under A.R.S. § 20-443(A)(1), Plaintiffs sufficiently alleged a claim for statutory fraud, where they allege that State Farm violated § 20-443 by mispresenting its Replacement Cost policy to the Plaintiffs, and to all proposed class members, when it

T2284714.DOCX;1

represented that the policy provides for a Replacement Cost valuation, even though State Farm knew it would not pay the full Replacement Cost Value for large fire losses, as it would be using a "new construction" database to adjust those claims, and (4) Plaintiffs' statutory fraud claim relates back to the original complaint because the amendment seeks relief with respect to a transaction or event which was  the basis of the original complaint.

<u>**STANDARD OF REVIEW**</u>

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "In determining whether an asserted claim can be sustained, '[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.'" *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**A.      <u>Factual Overview</u>.**

Xactimate is a property damage estimating program used by insurance companies, contractors, and public adjusters. Xactimate is the most widely-used software estimating system in the insurance industry, used to estimate the repair cost on property losses. For any given loss, there will be an Xactimate database for the location of the loss and the

T2284714.DOCX;1

time of loss or repair, and that database will contain researched (and constantly updated) labor and material prices for the specific location and time.[1]

State Farm uses the Xactimate software system to adjust residential and commercial property loss claims and it accepts the Xactimate pricing as an accurate estimate. FAC, ¶¶ 23, 24. Xactimate has two different databases: a "new construction" database for new construction and true ground-up rebuilds and a "restoration" database for all other losses. *Id.* at ¶¶ 22-27. The new construction database produces a lower estimate for the scope of work because it makes across-the-line reductions in labor costs based on labor efficiencies only realized in new construction or true ground-up rebuild projects. *Id.* at ¶ 28. But State Farm misuses the Xactimate program by applying "new construction" pricing on claims for which "restoration" pricing is appropriate, thereby arbitrarily paying less than the amount it reasonably knows should be paid to the respective policyholder to rebuild his or her home or other structure. *Id.* at ¶¶ 28-29, 32-34, 37-38.

State Farm issues (and issued in this case) a Replacement Cost policy. Such a policy allows the insured to recover the cost to replace an item of insured property (if it was damaged in a covered loss and if replacement is necessary) with a new version of what was damaged. This is sometimes referred to as "new for old" coverage. This type of coverage proceeds in two stages: (1) a Replacement Cost Value ("RCV") is determined, depreciation is deducted, resulting in an Actual Cash Value ("ACV"), and the ACV sum is paid; and (2) if the insured replaces the damaged property, they can seek the depreciation, sometimes called the "holdback." Such Replacement Cost coverage is meant to protect the

---

[1] *See, e.g., In re Chinese-Manufactured Drywall Products Liability Litigation,* 2010 WL 1710434, at \*19 (E.D. La. 2010) ("The Xactimate software program uses generally-accepted cost data sets and cost methodologies which are routinely used by the insurance industry …."); *Grand Reserve of Columbus, LLC v. Property-Owners Ins. Co.,* 2017 WL 2618952, at \*5 (M.D. Ga. 2017) (Xactimate is "well accepted" and "is standard in the insurance industry"); *Eagle View Technologies, Inc. v Xactware Solutions, Inc.,* 2015 WL 3794957, at \*2 (W.D. Wash. 2015) (the Xactimate software system, sold by Xactware Solutions, "has approximately 80 percent of insurance-repair contractors and 19 of the top 25 property insurers using its software to calculate cost of repairs."); *Vedder Software Group, Inc. v Insurance Services Office, Inc.,* 545 Fed.Appx. 30, 31 (2nd Cir. 2013) (Xactware is wholly owned by Insurance Services Office, Inc., which in turn is wholly owned by Verisk Analytics, Inc., a publicly traded company owned in part by various insurance companies ….") (the ownership structure later changed).
T2284714.DOCX;1

insured from receiving less as a result of depreciation and can often result "in putting the insured in a better position than she was in before the loss." NEW APPLEMAN ON INSURANCE § 47.04(b)(1) (Law Library Ed. 2012).

As alleged in the FAC, "State Farm made false and misleading statements as to the benefits available to the Plaintiff and Class Members under the policy" -and- "State Farm made, issued, circulated or caused to be made or circulated estimated [*sic*], illustrations, circulars, sales material or statements misrepresenting the terms of the policy issued." FAC, ¶¶ 72, 74. Most critically, the State Farm policy form promises that the insureds will receive Replacement Cost benefits so they can return their insured property to its pre-loss condition. *See* Exhibit A hereto, highlighted copy of the Replacement Cost policy issued to Plaintiffs, at bates numbers 4302 and 4318 ("We will pay the cost to repair or replace with similar construction and for the same use … the damaged part of the property …."). [2]

But contrary to what the State Farm policy says, State Farm underpays any major fire loss by using the "new construction" option in Xactimate, resulting in a savings to State Farm of 10% to 20%. FAC, ¶¶ 30-36, 40-43. The State Farm adjuster can literally just click a button on the Xactimate software and, by doing so, can arbitrarily reduce the amount of the estimate (and the subsequent payment). Conversely, it is just as easy to determine the amount State Farm should have paid; it would take one computer stroke per loss to reprice the estimates using the restoration database.

**B.    Procedural History.**

On December 6, 2015, a fire occurred at Plaintiffs' home. Plaintiffs filed a claim with their insurance company, State Farm. State Farm used the new construction setting to produce an Xactimate estimate for Plaintiffs' claim, a fire loss.

---

[2] "A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint." *Biltmore Assoc., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n. 1 (9th Cir. 2009) (citing *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).  Plaintiffs specifically reference the insurance policy issued by State Farm as "policy number 03-J4-4660-2."  FAC at 2:10-11.

T2284714.DOCX;1

Plaintiffs filed suit in Maricopa County on September 30, 2016. While that complaint did not assert a class action theory, it alleged that State Farm had underpaid the claim by approximately $50,000 (Complaint, ¶¶ 14-15). Also, before suing, Plaintiffs' Public Adjuster ("PA") put State Farm on notice that it was improperly engaged in a "misuse of the Xactimate estimating program by utilizing the 'New Construction' price database despite the fact that this loss is unquestionably a 'Restoration/Service/Remodel' project." Exhibit B, highlighted copy of letter from the PA.

On June 3, 2019, after the Maricopa County Superior Court granted leave over State Farm's opposition, Plaintiffs filed their FAC, asserting a class action and adding claims for unjust enrichment (Count III) and statutory insurance fraud, A.R.S. § 20-443 (Count IV). Pursuant to the Class Action Fairness Act and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453(a)-(b), State Farm removed the case to this Court on July 1, 2019.

## ARGUMENT

### A.   Count III, Unjust Enrichment.

While plaintiffs typically cannot claim unjust enrichment / restitution when they have enforceable rights under a contract, there are two reasons why the unjust enrichment claim should be allowed to proceed here: (1) opportunistic breach; and (2) the fact that Plaintiffs (and other class members) did not receive the benefit of their bargain.

**1.   Opportunistic Breach.** The RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT, § 39, entitled "Profit From Opportunistic Breach," provides that where "a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement, the promisee has a claim to restitution of the profit realized by the promisor as a result of the breach. Restitution by the rule of this section is an alternative to a remedy in damages." As noted by the RESTATEMENT (all emphasis added):

> **In exceptional cases, a party's profitable breach of contract may be a source of unjust enrichment at the expense of the other contracting party**. The law of restitution treats such cases in the same way that it treats other instances of intentional and profitable interference with another

T2284714.DOCX;1

person's legally protected interests, authorizing a claim by the injured party to the measurable benefit realized as a result of the defendant's wrong.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 39 (2011).

The common rationale of every instance in which restitution allows a recovery of profits from wrongdoing, **in the contractual context or any other**, is the reinforcement of an entitlement that would be inadequately protected if liability for interference were limited to provable damages. Cases in which restitution reaches the profits from a breach of contract are those in which the promisee's contractual position is vulnerable to abuse. Vulnerability in this context stems from the difficulty that the promisee may face in recovering, as compensatory damages, a full equivalent of the performance for which the promisee has bargained. **A promisor who was permitted to exploit the shortcomings of the promisee's damage remedy could accept the price of the promised performance, then deliver something less than what was promised. Such an outcome results in unjust enrichment as between the parties**. The mere possibility of such an outcome undermines the stability of any contractual exchange in which one party's performance may be neither easily compelled nor easily valued.

**A promisor who recognizes this possibility and attempts to profit by it commits what is here called an "opportunistic breach**."

*Id.* By analogy, Plaintiffs believe that discovery in this case may show that State Farm believed it could institute its use of the "new construction pricing" system on major fire losses because (1) all or most of the losses would be too small to justify individual litigation and (2) the difficulties of maintaining a class action for breach of contract or fraud would protect State Farm.

But the elements of an Arizona claim for unjust enrichment (and the proposed class action here is statewide only) are easier to meet than the other claims in this case; namely, a benefit to the defendant, resulting in unjust enrichment, and the circumstances are such that restitution should be granted. *Murdock-Bryant Construction, Inc. v. Pearson,* 146 Ariz. 48, 53 (1985). *Cf. Trazo v. Nestle USA, Inc.*, 113 F.Supp.3d 1047 (N.D. Cal. 2015), where the Court granted a motion for reconsideration of its order dismissing an unjust enrichment claim in a putative class action, citing and discussing *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762-63 (9th Cir. 2015), to the same effect.

T2284714.DOCX;1

In an attempt to persuade this Court that "Arizona has declined to adopt [§ 39 of the RESTATEMENT]," *see* MTD at 8:20 to 9:12, State Farm cites *KnightBrook Ins. Co. v. Payless Car Rental System Inc.*, 243 Ariz. 422 (2018), where the Arizona Supreme Court declined to adopt a **completely separate section** of the RESTATEMENT (FIRST) OF RESTITUTION (§ 78). But *KnightBrook* is inapposite here, since it did not address § 39 of the RESTATEMENT (THIRD), and the Arizona Supreme Court expressly stated, "we leave for another day whether to adopt other portions of the First or Third Restatements of Restitution …." *KnightBrook*, 243 Ariz. at 427. Contrary to State Farm's argument, Arizona has not declined to adopt § 39 of the RESTATEMENT (THIRD) OF RESTITUTION. The issue in *KnightBrook* was quite different, one of equitable indemnity, and *KnightBrook* had nothing to do with the concept of an opportunistic breach of contract. Opportunistic breach is an exception to the general rule that plaintiffs cannot claim unjust enrichment when they have enforceable rights under a contract. Also, the general rule in Arizona remains that, "In the absence of contrary authority Arizona courts follow the Restatement of the Law." *Bank of America v. J. & S. Auto Repairs,* 143 Ariz. 416, 418 (1985).

State Farm also relies on *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1122 (D. Ariz. 2010) to contend that Plaintiffs cannot bring a claim for unjust enrichment since they have an alternative remedy available under the tort of bad faith. MTD, pp. 7-8. However, State Farm fails to distinguish the remedies available for bad faith claims versus unjust enrichment. Unlike the Plaintiff's situation in the present case, *Johnson* did not involve an insurance contract where the insurer was unjustly enriching itself in the form of collecting premiums for coverage which it did not intend to provide (at least in part). The bad faith remedy arises from State Farm's wrongful failure to process the claim in good faith, while the unjust enrichment claim stems from State Farm retaining engorged profits due to collecting premiums from Plaintiffs for coverage that it never provided.

State Farm wrongfully gained profits through (1) collecting premiums for the sale of Replacement Cost policies and (2) cost savings realized through its use of the new construction database on large fire loss restoration projects. These profits are greater than

T2284714.DOCX;1

what State Farm would have realized had it provided its insureds with the benefits those insureds were entitled to under their insurance contracts.

Plaintiffs believe they have a proper contract claim. But in the event Plaintiffs' contract remedies are insufficient to make them whole, Plaintiffs (and all class members) should be able to pursue an equitable remedy through a claim for restitution and unjust enrichment. *See EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 119 (Colo. 1995) (where the Colorado Supreme Court held that if "the [breaching party's] wrongdoing is intentional or substantial, or there are no other means of measuring the wrongdoer's enrichment, recovery of [the wrongdoer's] profits may be granted") (citing 1 George E. Palmer, *The Law of Restitution* § 2.12 at 164-65); *see also Watson v. Cal-Three, LLC,* 254 P.3d 1189 (Colo. App. 2011) (discussing the Colorado Supreme Court's ruling in *EarthInfo*: "indeed, Restatement (Third) of Restitution § 39(1) (Tentative Draft No. 4, 2005), which appears to formulate a general rule in synthesizing breach of contract cases allowing recovery of a defendant's profits, notes that liability in restitution with disgorgement of profits is an alternative to liability for contract damages measured by injury to the promise.") (citations omitted).

**2.     Plaintiffs Did Not Receive the Promised Contractual Benefits.** Under Arizona law, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Adelman v. Christy*, 90 F.Supp.2d 1034, 1045 (D. Ariz. 2000). In *Adelman*, the Arizona District Court discussed the exact same quote from *Brooks v. Valley Nat'l Bank,* 113 Ariz. 169, 174 (1976), on which State Farm relies in its MTD, at 6:15-20:

> **The language in *Brooks*, quoted by the Defendants and often cited by Arizona courts, is misleadingly overbroad. The mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery.** A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already *received* the benefit of her contractual bargain. *See USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 355, 732 P.2d 579 (Ariz.Ct.App.1986) (**when a plaintiff does not obtain the benefit of its bargain, she is "free to pursue a claim for unjust enrichment"**); Restatement (First) of Restitution § 107 (1936).… Although Adelman's recovery under an unjust enrichment theory may be less than her recovery under a breach of contract

T2284714.DOCX;1

> theory, she is entitled to pursue that alternative theory although she will, of course, be barred from collecting a double recovery should she prevail on the merits at trial.

*Adelman*, 90 F. Supp. 2d at 1045 (bold emphasis added, italics in original).

Thus, applying Arizona law, "A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already *received* the benefit of her contractual bargain." *Adelman,* 90 F.Supp.2d at 1045 (emphasis in original). *See also Brooks, supra,* where the Arizona Supreme Court, right above the quote saying there is no unjust enrichment claim if there is a governing contract, states, "A person is not entitled to compensation on the grounds of unjust enrichment **if he receives from the other that which it was agreed between them the other should give in return**." 113 Ariz. at 174 (emphasis added, citing to § 107 of the RESTATEMENT (FIRST) OF RESTITUTION). *Accord,* RESTATEMENT § 107 (contracting party is not entitled to compensation other than in accordance with the contract "unless the other has failed to perform his part of the bargain"). *See also In re Banner Health Data Breach Litigation*, 2017 WL 6763548, at *6 (D. Ariz. 2017) (quoting and citing with approval to *Adelman*) (The *Banner* Court stated: "The mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Adelman v. Christy*, 90 F.Supp.2d 1034, 1045 (D. Ariz. 2000). "A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already *received* the benefit of her contractual bargain**.**" *Id.* Plaintiffs here allege that they have not. Therefore, the Court denies Defendant's Motion to dismiss this claim.").

The purpose of disallowing unjust enrichment claims where contracts exist are to avoid "double recovery." *See USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 355 (App. 1986) (citing *Jennings v. Lee*, 105 Ariz. 167 (1969)); *see also Fousel v. Ted Walker Mobile Homes, Inc.*, 124 Ariz. 126 (App. 1979). But here, similar to *Adelman*, the Plaintiffs are not precluded from pursuing claims for unjust enrichment because they have not already received the benefit of their contractual bargain. Rather, Plaintiffs (and the other class members who received the same policy) were promised Replacement Cost coverage, but if they had a major fire loss, they received less than they were promised.

T2284714.DOCX;1

**B.      Count IV, Statutory Fraud Under A.R.S. § 20-443.**

**1.      Private Right of Action.**  In *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 540-41 (1982), the Arizona Supreme Court held that a private right of action exists under A.R.S. § 20-443.

**2.      Arizona Law Regarding Fraudulent Omissions.** A.R.S. § 20-443(A)(1) prohibits "[m]isrepresenting the terms of any policy issued or to be issued . . ." According to the Arizona Supreme Court in *Sparks,* § 20-443 "deals with unfair practices and frauds in the transaction of the insurance business." *Id.* at 541. A.R.S. § 20-443 is similar to the Arizona Consumer Fraud Act, A.R.S. § 44-1522, which also provides a private right of action. *See Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 576 (1974). "'The Arizona Consumer Fraud Act … and the Unfair Insurance Practices Act, A.R.S. § 20-443 … are both statutory fraud claims and have identical elements.'" *Moreno v. Minnesota Life Ins. Co.,* 2015 WL 1457419, at *4 (D. Ariz. 2015) (quotation omitted). With respect to the Consumer Fraud Act, Arizona law is clear that a material omission can constitute a misrepresentation, *State ex rel. Horne v. AutoZone, Inc.,* 229 Ariz. 358, 361 (2012), and an omission is material if it is "logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction." *Demaree v. Wal-Mart Stores, Inc.,* 511 Fed.Appx. 660, 661 (9th Cir. 2013) (applying Arizona law).

**3.      The Fraudulent Omission Here.** The FAC alleges that State Farm misrepresented the Replacement Cost Value and the Actual Cash Value that the class members were entitled to by using the new construction database for restoration property claims, whereas the restoration database should have been used. State Farm violated A.R.S. § 20-443 by sending out its Replacement Cost policy (*see* Exhibit A) to the Plaintiffs, and to other Arizona class members, telling the insureds that they would receive Replacement Cost coverage, but never telling them that if they had a major fire loss, they would receive less. Also, as alleged in the FAC, at all relevant times, State Farm knew that it would not pay the full Replacement Cost Values for large fire losses, since it would

T2284714.DOCX;1

then use the new construction database for those claims. But State Farm never disclosed this to the insureds. FAC, ¶¶ 38-43.

State Farm sold Plaintiffs a Replacement Cost policy promising: "We will pay the cost to repair or replace the damaged part of the property … covered under Section 1-COVERAGES, COVERAGE A- DWELLING." *See* Exhibit A at bates number 4318. Despite this language in the State Farm policy form, State Farm implemented a common scheme of deliberately failing to provide full Replacement Cost coverage on major fire loss claims. Upon information and belief, the approach taken by State Farm on this issue is contrary to what other carriers do, and is contrary to explicit guidance from Xactware (which sells Xactimate) as to when the new construction pricing database should be used; namely, it should only be used on new construction or a "ground-up" rebuild. Plaintiffs deserve discovery on these issues and, if the Court wishes, Plaintiffs will amend their complaint to make detailed allegations along these lines. Also, although this is a response to a motion to dismiss, in terms of an offer of proof, in the underlying state court case, the State Farm adjuster admitted that the Plaintiffs' loss was neither new construction nor a ground-up rebuild, and he testified that, per a mandate from State Farm headquarters, he and his group used the new construction database on **all** major fire losses in Arizona.

Even the most liberal reading of the policy gives no indication that State Farm would use new construction pricing for restoration and remodeling jobs. Even more fundamentally, any reasonable person reading the State Farm policy form would believe that State Farm will pay the promised Replacement Cost, and they would never realize that State Farm had reworked its procedures to deprive its insureds of ten percent, or more, of the actual repair costs if there is a major fire loss.

**4.** **The "Relation Back" Doctrine under Rule 15.** Plaintiffs' amended complaint relates back to the original complaint because the original complaint alleged a common scheme of conduct; also, State Farm had adequate notice of the conduct upon which Plaintiffs based their claim. *See Marshall v. Maricopa Cnty.*, 131 Ariz. 379 at 382 (1982). "It is only when the amendment seeks relief with respect to a transaction or event

T2284714.DOCX;1

which was not the 'basis of the original complaint' that the doctrine of relation back is considered inapplicable." *Id.* at 383. Federal Rule 15 is substantially similar to Arizona Rule 15, and federal law on relation back is as follows:

> Although Rule 15(c) does not expressly apply to a new pleading adding or dropping plaintiffs, the Advisory Committee Note to the 1966 amendment of the rule indicates that the problem of relation back generally is easier to resolve in this context than when it is presented by a change in defendants and that the approach adopted in Rule 15(c) toward amendments affecting defendants extends by analogy to amendments changing plaintiffs. **As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected <u>if a new plaintiff is added, and defendant should not be permitted to invoke a limitations defense</u>**. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading.

6 WRIGHT & MILLER, *Federal Practice and Procedure* § 1501 (emphasis added).

Under federal law, Rule 15(c) allows relation back when a party amends the complaint to assert a class action. *See Sokolski v. Trans Union Corp.*, 178 F.R.D. 393 (E.D.N.Y. 1998). In *Sokolski*, a debtor plaintiff filed a complaint against a credit bureau and a bank alleging that they engaged in deceptive and unfair practices via written communications to plaintiff to collect a debt allegedly owed by plaintiff in violation of the Fair Debt Collection Practices Act. Subsequently, the plaintiff moved to amend the complaint to assert a class action to include a class of all persons who received similar letters to that received by the plaintiff.

In *Sokolski*, the defendants (a credit bureau and a major bank) opposed the motion to amend on the grounds that it was prejudicial, untimely, and futile. Addressing these arguments, the *Sokolski* Court stated:

> A motion to amend the complaint may be considered futile if the claims sought to be added are barred by the relevant statute of limitations. [Citations omitted.] However, under Rule 15(c) of the Federal Rules of Civil Procedure, **an otherwise time-barred claim may be deemed timely based on the "relation back" doctrine**. [Citation omitted.] Rule 15(c)(2) provides, in pertinent part, that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence

T2284714.DOCX;1

- 12 -

set forth or attempted to be set forth in the original pleading." [Citation omitted.] In deciding whether the claims relate back, the court must also examine if "the factual allegations set forth in the original complaint gave the defendants adequate notice of the new claims."

*Id.* at 397 (emphasis added).

Consequently, the two prongs to consider under the relation back doctrine are: (1) whether the claims arise out of a common scheme and (2) whether the defendant had adequate notice of the potential for additional claims. *Raynor Bros. v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982).

      **a.**      **Common Scheme.**  The relation back doctrine operates when "there is a common core of operative facts linking the amendments and the original complaint." *Sokolski* at 397 (citation omitted). "The existence of an underlying common scheme or course of conduct which is the basis of the original action and links otherwise distinct transactions provides grounds for relation back under Rule 15(c)." *Id.*; *see also Marshall v. Maricopa Cnty.*, 131 Ariz. 379, 382 (1982).

Upon examining the facts of the original complaint and the new claims proposed in the amended complaint, *Sokolski* found the new claims were a "natural offshoot" of the "basic scheme" to defraud the original plaintiff debtor, and, therefore, the new claims related back and were not futile as barred by the statute of limitations. *Sokolski* at 397. Like *Sokolski*, Plaintiffs alleged in their original complaint specific conduct of State Farm in underpaying the claim, and even before suit was filed, State Farm was on notice that the insured was objecting to the use of the new construction database. *See* Exhibit B. Given this, the amendment to assert a class claim is a "natural offshoot" of State Farm's "basic scheme" to use the new construction database to pay less than the promised Replacement Cost coverage on major fire losses.

      **b.**      **Adequate Notice**. Next, *Sokolski* addressed whether defendants had adequate notice of the existence of additional possible plaintiffs and claims based on "a liberal reading of the complaint." *Id.* at 398.  Under Rule 15(c)(3), an amendment relates back if the defendant knew or should have known that it could be called on to defend

T2284714.DOCX;1

against claims asserted by the newly-added plaintiffs, unless the defendant would be unfairly prejudiced in maintaining a defense against the newly-added plaintiffs. *Plubell v. Merck & Co., Inc*., 434 F.3d 1070, 1072 (8th Cir. 2006) (citations omitted). "As long as a defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the actions against him, he will not be prejudiced by the addition of a new plaintiff and thus should not be allowed to raise a limitations defense. As long as the original complaint gives the defendant adequate notice, an amendment relating back is proper even if it exposes a defendant to greater damages. The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." *Sokolski* at 398. "Allegations which simply 'amplify the facts alleged in the original pleading or set forth those facts with greater specificity' will relate back." *In re Chaus Securities Litigation*, 801 F. Supp 1257, 1264 (S.D.N.Y. 1992) (quotation omitted).

The original complaint in *Sokolski* alleged defendants "intended to induce plaintiff *and others* to send money to Bank One Corporation by sending, encouraging and/or authorizing the letter in its name and/or on its letterhead." *Sokolski* at 398 (emphasis in original). Also, the complaint alleged "that Trans Union Corp. authorized Bank One Corp. to use Trans Union Corporation's letterhead or name and collection package to send dunning letters to consumers, and Plaintiff, Robert E. Sokolski." *Id.* The Court found "the defendants had sufficient notice that a class action could be filed against them and that the conduct complained of affected other persons." *Id.* Based on this finding, the Court found that the amended complaint to assert a class action related back to the filing of the original complaint. *Id.*

While certainly helpful to impute notice to the defendant in *Soloski*, mentioning "others" in the original complaint is not necessary to satisfy the adequate notice requirement. *Chaus* found that the original complaint provided sufficient notice where it alleged specific facts that made up a basic scheme of financial and accounting

T2284714.DOCX;1

manipulations so that the allegations in the amended complaint were a "natural offshoot" of the "basic scheme." *Chaus* at 1264.

Here, State Farm had adequate notice that it could face a class action and a claim for statutory fraud because Plaintiffs alleged a basic scheme used by State Farm to generate lower Replacement Cost Values and Actual Cash Values for restoration claims. Furthermore, Plaintiffs alleged the following in the original complaint, "State Farm has consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to *others*." Complaint, at 6:1-2 (emphasis added). State Farm knew its course of conduct was not isolated to just the Plaintiffs because it was common practice for State Farm to use the new construction database for all large reconstruction claims in lieu of the restoration / remodel database.

Plaintiffs' original complaint sufficiently stated the facts that made up State Farm's basic scheme of generating lower Replacement Cost Values and Actual Cash Values. The additional class members and claims in the Amended Complaint are a "natural offshoot" of State Farm's "basic scheme." *See Sokolski* and *Chaus, supra.* Plaintiffs' allegations in the Amended Complaint "constitute neither a new transaction or occurrence nor a new claim." *See Chaus* at 1264.

In this case, the adequate notice requirement is satisfied because Plaintiffs' original complaint alleged that State Farm engaged in a course of conduct it knew was harmful to others, and State Farm knew that it engaged in this unlawful course of conduct with a great many substantially similar claims over the course of several years. *See also* Exhibit B. State Farm is not prejudiced just because class members and a claim of statutory fraud are added and they are exposed to greater damages. *See Sokolski* at 398. Because State Farm was "fully apprised of the claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added." *See* 6 Wright & Miller, Federal Practice and Procedure § 1501.

Under Rule 15(c), this Court should hold that Plaintiffs' Amended Complaint, including the claim for statutory fraud under A.R.S. § 20-443, relates back to the original

T2284714.DOCX;1

Complaint. This is so because the new claims arise out of the same course of conduct complained of in the original pleading, and State Farm had adequate notice that it could be called on to defend against claims from additional plaintiffs also.

## CONCLUSION

This Court should deny Defendant's Motion to Dismiss because (1) the "opportunistic" breach of contract concept from the RESTATEMENT OF RESTITUTION applies here, (2) Plaintiffs' claim for unjust enrichment is viable despite the claim for breach of contract since Plaintiffs never received the benefit of their contractual bargain, and (3) the statutory fraud claim under A.R.S. § 20-443 is a viable claim here and it shoud relate back under Rule 15.

RESPECTFULLY SUBMITTED this 5th day of August, 2019.

MERLIN LAW GROUP, P.A.


By   */s/ Michael N. Poli*
Michael N. Poli
Lawrence R. Moon
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018
Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2019, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal to the following recipient:

Robert Sullivan
rts@bowwlaw.com
Alicyn Freeman
amf@bowwlaw.dom
BROENING OBERG WOODS & WILSON
2800 N. Central Avenue, Suite 1600
Phoenix, AZ  85004
Attorneys for Defendant State Farm Fire
And Casualty Company


_____ */s/ Linda Gundelach*


T2284714.DOCX;1