**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anderson Phillips, et al., | No. CV-19-04605-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Fire and Casualty Company, | |
| Defendant. | |

Pending before the Court is Defendant State Farm Fire and Casualty Company's ("Defendant's") Motion to Dismiss Counts III and IV of Plaintiffs' First Amended Class Action Complaint. (Doc. 7.) The Motion is denied.[1]

**BACKGROUND**

The facts alleged in the complaint are as follows. Defendant is an Illinois corporation engaged in the business of insurance in Arizona. Defendant contracts with Xactware, a company that sells a structural damage estimate program, to adjust residential and commercial property loss claims. Xactware's estimating tool has two different databases: a restoration database and a new construction database. The new construction database is used when property damage is so extensive that a ground up rebuild is required, while the restoration database is used when property damage requires renovation or repairs, but not a ground up reconstruction. Because it includes efficiencies in labor cost associated

---

[1] The parties have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

with ground up construction, the new construction database produces a lower cost estimate than the restoration data base would produce for the same scope of work. Defendant selects which of the two databases to use when adjusting a claim.

On December 6, 2015, a fire occurred at the home of Plaintiffs Anderson and Jasmine Phillips ("Plaintiffs"), causing considerable damage to the home and Plaintiffs' personal property. Plaintiffs timely submitted a claim to Defendant for their loss and performed their obligations and responsibilities under their insurance policy with respect to the claim. On December 14, 2015, Defendant inspected Plaintiffs' home and personal property. Defendant subsequently estimated Plaintiffs' repair costs at $153,759.64. Plaintiffs also retained the services of a public adjuster, Skipton & Associates, Inc. ("SAI"). SAI inspected Plaintiffs' home and personal property on December 28, 2015 and submitted a repair cost estimate of $203,114.69. Defendant refused to pay the higher amount estimated by SAI.

Plaintiffs filed suit in Maricopa County Superior Court on September 30, 2016 alleging breach of insurance contract and tortious bad faith. While that complaint did not assert a class action theory, it alleged that Defendant had underpaid Plaintiffs' claim by approximately $50,000. On June 3, 2019, after the court granted leave over Defendant's opposition, Plaintiffs filed their amended complaint, asserting a class action and adding claims for unjust enrichment (Count III) and statutory insurance fraud under A.R.S. § 20-443 (Count IV). Plaintiffs allege Defendant used Xactware's new construction database on claims that did not require a ground up rebuild, including Plaintiffs' claim. Plaintiff further alleges that as a result, Defendant knowingly and intentionally underpaid on replacement cost claims to the detriment of Plaintiffs and other insured parties. Pursuant to the Class Action Fairness Act and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453(a)-(b), Defendant removed the case to this Court on July 1, 2019. On July 8, 2019, Defendant filed this Motion to Dismiss.

/ / /

/ / /

**DISCUSSION**

**I.     Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**II.    Analysis**

   **A.    Count III: Unjust Enrichment**

Plaintiffs argue that they and each member of the putative class conferred a direct benefit on Defendant through payments for property insurance, and that Defendant unjustly enriched itself by using new construction costs to calculate renovation losses. Defendant argues that this claim must be dismissed because the parties' dispute is governed by contract (insurance policies) and Counts I and II of the complaint already allege claims arising out of the alleged breach of that contract.

To state a claim for unjust enrichment in Arizona, a plaintiff must prove, among other elements, the absence of a remedy at law.[2] *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D.

---

[2] The four other elements of unjust enrichment are: (1) an enrichment; (2) an

340, 353–54 (D. Ariz. 2009). Defendant therefore argues that Plaintiffs cannot recover on an unjust enrichment claim because they have "a relationship with the defendant [] governed by a valid express contract," *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 408 (9th Cir. 1992), and can recover through breach of contract remedies. Plaintiffs do not dispute that they and all putative class members have valid commercial or residential property insurance policies with Defendant. However, they argue that their unjust enrichment claim should proceed regardless under the theory of opportunistic breach described in Restatement (Third) of Restitution and Unjust Enrichment, § 39. Opportunistic breach provides that where "a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement, the promisee has a claim to restitution of the profit realized by the promisor as a result of the breach." Restatement (Third) of Restitution and Unjust Enrichment, § 39, 2011. Plaintiffs fail to cite a single case in which an Arizona court has adopted this section of the Third Restatement. Nor has the Supreme Court "[]ever before relied on § 39 nor adopted its proposed theory of disgorgement." *Kansas v. Nebraska*, 574 U.S. 445, 135 (2015) (Thomas, J, concurring in part and dissenting in part) (describing § 39 as a "novel extension" of restitution principles that "lacks support in the law" upon which "few courts have ever relied"). "The sheer novelty of this proposed remedy counsels against applying it here," *id.*, and Plaintiffs cannot rely on this theory to support their claim.

Plaintiffs next argue that the "mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery," *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000), because a "theory of unjust enrichment is unavailable only if a plaintiff has already received the benefit of her contractual bargain," *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *6 (D. Ariz. Dec. 20, 2017). Plaintiffs assert that unjust enrichment is applicable here because they did not receive the benefits promised in their

---

impoverishment; (3) a connection between the enrichment and the impoverishment; and (4) absence of justification for the enrichment and the impoverishment.

contract with Defendant: "Plaintiffs (and the other class members who received the same policy) were promised Replacement Cost coverage, but if they had a major fire loss, they received less than they were promised." (Doc. 11 at 9.)

Defendant cites the Arizona Court of Appeals' decision in *Trustmark Ins. Co. v. Bank One, Arizona, NA* for the provision that "a contractual relationship that can be evaluated in a breach of contract action" precludes an unjust enrichment claim. 202 Ariz. 535, 48 P.3d 485 (Ct. App. 2002), *as corrected* (June 19, 2002). But in *USLife Title Co. of Arizona v. Gutkin*, the same court distinguished between cases in which the defendant "performed his obligation, pursuant to agreement with [the plaintiff]" and those in which the defendant failed to perform and the plaintiff "did not obtain the benefit of its bargain"; in the latter, the court found the plaintiff free to pursue a claim for unjust enrichment. 152 Ariz. 349, 355, 732 P.2d 579, 585 (Ct. App. 1986) (comparing *USLife*, where the defendant performed his contractual obligation, to *Automotive Tire Services, Inc. v. First Nat'l Bank of Arizona*, 102 Ariz. 512, 433 P.2d 804 (1967), where the defendant agreed to pay the plaintiff bank back after settling its business affairs and did not do so). As Plaintiffs plausibly allege that they did not receive the benefits promised in their contracts with Defendant, they are free to pursue an unjust enrichment claim. Defendant's motion is denied as to Count III.[3]

### B. Count IV: Misrepresentations and False Disclosures (A.R.S. 20-443)

Plaintiffs allege Defendant made false and misleading statements as to the benefits available under Defendant's insurance policies to induce Plaintiffs and class members to accept settlement payments based on false labor costs. Plaintiffs further allege Defendant

---

[3] Defendant also quotes *Trustmark* in arguing that *Adelman* is inapplicable to the instant case where neither party disputes the existence of a contractual relationship or the validity of the insurance policies: "we find *Adelman* to be distinguishable. . . . The *Adelman* court concluded that the plaintiff could pursue an unjust enrichment claim . . . in case the contract was found invalid or the plaintiff was deemed the breaching party, in which case the plaintiff would not have a remedy at law to recover payment for the services she had rendered." 48 P.3d at 492–93. But the plaintiff in *Adelman admitted* that a valid, written contract governed her relationship with the defendant. 90 F. Supp. 2d at 1045. The *Adelman* court allowed her unjust enrichment theory to survive summary judgment not because the validity of the contract was in question, but because, as here, she did not receive compensation for her performance before the defendant breached. *Id.*

made, issued, circulated or caused to be made or circulated illustrations, circulars, sales material or statements misrepresenting the terms of their insurance policies.

The parties agree that A.R.S. 20-443 provides a private cause of action but disagree about the statute's scope.[4] Plaintiffs argue that A.R.S. § 20-443 generally prohibits "[m]isrepresenting the terms of any policy issued or to be issued," and that Defendant violated A.R.S. § 20-443 by sending Plaintiffs and class members policies promising replacement costs but providing only new construction cost coverage. (Doc. 11 at 10.) Defendant reads A.R.S. § 20-443 more narrowly and argues that the statute "does not apply to alleged misrepresentations or false statements made during the adjustment of a claim," but prohibits only "misrepresentations and false or misleading statements about the *sale or advertisement* of an insurance policy." (Doc.7 at 11) (quoting *Enyart v. Transamerica Ins.*

---

[4] A.R.S. § 20-443. Misrepresentations and false advertising of policies; false disclosure of compensation:

> A. A person shall not make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
>
> 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received.
>
> 2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
>
> 3. Making any misleading representation or any misrepresentation as to the financial condition of any insurer or as to the legal reserve system upon which any life insurer operates.
>
> 4. Using any name or title of any policy or class of policies misrepresenting the true nature of the policy.
>
> 5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.
>
> 6. Referring to the coverage or any of the provisions of chapter 3, article 6 or 7 of this title1 in connection with the sale or attempted sale of any policy of insurance, except in connection with the notice prescribed in § 20-400.10, subsection E, § 20-410, subsection B and § 20-422, subsection C.
>
> B. An insurance producer, consultant or third party administrator shall not falsely disclose the method or amount of compensation associated with a health benefits plan as defined in § 20-2301.

*Co.*, 985 P.2d 556, 563 (Ariz. Ct. App. 1998)) (emphasis added).

Neither party cites a case definitively stating whether A.R.S. § 20-443 applies to misrepresentations beyond the sale or advertisement of policies. However, Defendant raises A.R.S. § 20-461 to support its position that § 20-443 does not apply to misrepresentations of claims during the adjustment process because "[s]uch an interpretation would circumvent the Arizona Legislature's clear intent that there be no private right of action under § 20-461 and render it a nullity." (Doc. 7 at 12.) A.R.S. § 20-461 clearly applies to the adjustment of insurance claims, prohibiting insurance companies from "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." Ariz. Rev. Stat. Ann. § 20-461. And A.R.S. § 20-461 plainly states that "[n]othing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state." *Id*. The Court therefore finds that A.R.S. § 20-443 applies *only* to "misrepresentations and false or misleading statements about the *sale or advertisement* of an insurance policy." *Enyart*, 985 P.2d at 563 (emphasis added).

Plaintiffs have not provided detailed factual allegations regarding false or misleading statements connected to the sale or advertisement of Defendant's policies. However, Plaintiffs' plausible allegation that Defendant "made, issued, circulated or caused to be made or circulated estimated, illustrations, circulars, sales material or statements misrepresenting the terms of the policy issued," (Doc. 1-3 at 516), is still sufficient to survive the low threshold of a motion to dismiss.

Defendant argues that even if Plaintiffs have sufficiently pleaded a claim for relief under A.R.S. § 20-443, their claim must nevertheless fail under the one-year statute of limitations that applies to that cause of action, *see* Ariz. Rev. Stat. Ann. § 12-54; *Sparks v.*

1  *Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 541, 647 P.2d 1127, 1139 (1982), because the original complaint does not allege any misrepresentations related to the sale of the policy. Plaintiffs argue that the amended complaint "relates back" to the original complaint because the claims in the original and amended complaints "arise out of a common scheme" such that Defendant "had adequate notice of the potential for additional claims." *Raynor Bros. v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982). The initial claim need not go so far as to give the defendant "fair warning that he might later be accused of some other offense than that raised in the first pleading," but the later claims must "arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988).

While the original complaint does not discuss the sale or advertisement of Defendant's policies, it asserts that Defendant "fraudulently" and "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others" when it did not provide payment in full for "items that should have been paid for or covered by the Policies." (Doc. 1-3 at 10.) This claim arises out of the same conduct as Defendant's alleged distribution of "sales material or statements misrepresenting the terms of the policy issued" (Doc. 1-3 at 516) in that both alleged that the policy was advertised as providing greater coverage benefits than Plaintiffs ultimately received. Because the original and amended complaints arise out of a common scheme, the Court finds that the amended complaint relates back to the original complaint. The A.R.S. § 20-443 claim is therefore not time-barred, and Defendant's motion is denied as to Count IV.

## CONCLUSION

Plaintiffs plausibly allege that they did not receive the benefits promised in their contracts with Defendant. Plaintiffs also plausibly allege that Defendant made misrepresentations in the sale or advertisement of its policies. Finally, Plaintiffs claim under A.R.S. § 20-443 is not time-barred because Plaintiffs' original and amended complaints arise out of a common scheme.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **DENIED**.

**IT IS FURTHER ORDERED** directing Defendant to file an answer to the First Amended Class Action Complaint **within fourteen (14) days** of the date of this Order. Thus, the parties' obligations to produce the information called for in the MIDP within 30 days of the filing of an answer, as set forth in paragraph (A)(6) of the General Order, will be triggered by Defendant's filing of an answer.

Dated this 6th day of November, 2019.

G. Murray Snow
Chief United States District Judge